IN THE UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF FLORIDA

DARRYL SMITH,

    Petitioner

Vs.

United States of America

    Respondent

_____/

Case No.: 04 - 60 56

Trial Case No.: 00-6061-CR-WDF

CIV - DIMITROULEAS

**MOTION TO VACATE CONVICTION
AND SENTENCE PURSUANT TO
TITLE 28§2255, U.S.C.A.**

     **COMES NOW** the Petitioner, Darryl Smith, by and through undersigned

counsel, pursuant to Title 28§2255, U.S.C.A. and Moves this Court to Vacate the

Convictions and Sentences entered in this Cause. He would state:

    1.    Petitioner is in the custody of the Respondent, United States of America

and is imprisoned by the United States Department of Corrections.

    2.    The jurisdiction of this Court is invoked pursuant to Title 28§2241 and

§2255, U.S.C.A.

    3.    Mr. Smith was formerly the Defendant in U.S. District Court case No. 00-

6061-Cr-WDF.

    4.    By indictment, Mr. Smith was charged with:

> *Conspiracy to Import Marijuana and Cocaine (1)*
> *Conspiracy to Possess and Distribute Marijuana and Cocaine (2)*
> *Importation of Marijuana (3)*
> *Possession of Marijuana on 2/27/99 (4)*
> *Possession of Marijuana on 3/15/00 (5)*
> *Possession of Firearm By Convicted Felon (6)*
> *Possession of Ammunition By Convicted Felon (7)*
> *Bringing Illegal Aliens into U.S. (8, 9, 10).*

    5.    Counts 6 and 7 were Severed.

1



6.    Following a Jury Trial, Mr. Smith was convicted of:

*Counts 1 and 2*
*Count 3*
*Counts 4 and 5*
*Counts 6 and 8*

7.    Mr. Smith was Sentenced to:

*262 months prison and 5 years Supervised Release – Counts 1 and 2*
*240 months prison                              - Counts 3,4 and 5*
*120 months prison and 3 years Supervised Release - Counts 6 and 8*

8.    Mr. Smith timely appealed his convictions and sentences to the Eleventh

Circuit Court of Appeals.

9.    The Eleventh Circuit Court of Appeals affirmed Mr. Smith's convictions

and sentences, Petition for Rehearing Denied February 28, 2003, Mandate issued March

12, 2003.

10.    On Appeal, Mr. Smith argued:

The erroneous exclusion of African Americans from his jury.

The prejudicial remarks of witness Mussoline.

Sufficiency of the Evidence.

11.    In its Brief, the Government argued:

*No mistrial was required as a result of Missoline's testimony.*
*As the district court recognized, Smith opened the door to the*
*comment challenged on appeal by cross-examining Mussoline*
*about an inadmissible memorandum disclosed as Jencks material.*
*Smith's trial counsel took responsibility for the so-called "outburst"*
*and requested a curative instruction which the district court gave*
*the jury.*

*(p.35, Government Brief).*

2

and,

> *A review of the record reveals that Mussoline's comment,*
> *and indeed the entire issue on appeal, resulted not from*
> *the government's direct examination, but from Smith's*
> *cross-examination, including his decision to question*
> *Mussoline about a Sea board memorandum, disclosed as*
> *Jenks material, that was not in evidence and had not been*
> *the subject of direct examination; that at sidebar Smith's*
> *trial counsel apologized for his "outburst" and requested*
> *a curative instruction which the direct court gave the jury'*
> *and, that the Statement was not as inflammatory as Smith claims.*

> *(p.45, Govt.Brief).*

12.    The Eleventh Circuit Court of Appeals affirmed Mr. Smith's convictions and sentences Per Curium.

13.    No other Petition or Motion for Relief has been filed by Movant.

       This Motion follows.

## FACTS

Darryl Smith was not caught in the actual possession of any substance for which he was convicted.

Darryl Smith was not caught/arrested while in the performance of any criminal activity.

No fingerprints of Darryl Smith were found on any illegal substances.

The evidence in this case basically consisted of the testimony of individuals who were arrested, were facing lengthy prison terms and who "bought" themselves out of trouble by testifying against Darryl Smith.  (T.1257).

3

Only the word of Sean Harris and Wilton Ellis, an illegal alien, who were both caught red-handed on a boat with marijuana, connected Mr. Smith to the February 27, 1999 incident.

Only Ellis's and Harris's "word" connected Mr. Smith to an alleged February 6, 1999 marijuana smuggling incident.

Only the word of Harris linked Mr. Smith to the January 1998 Cargo Container incident.

Only the word of Harris linked Mr. Smith to the October 1998 Cargo Container incident.

Only the testimony of Harris and the videotaped deposition of Tommie Thompson, who had himself been convicted and was about be deported, linked Mr. Smith to the Alien Smuggling Incidents.

While found to be sufficient by the jury, the evidence against Mr. Smith was not overwhelming.

## Monetary Conflict with Counsel

A.    **Before Trial**

His trial counsel charged Petitioner $100,000 to defend him.

The fee was paid in full.

Ten days before trial, trial counsel told Petitioner that he required an additional $5,000 "loan" from Petitioner otherwise, trial counsel would be "locked up".

4

To avoid his attorney being "locked up" on the eve of trial, Petitioner gave his trial counsel the $5,000 that his trial counsel demanded.

This $5,000 was never returned to Petitioner, who now is serving 262 months imprisonment after being represented at trial by trial counsel.

The failure of trial counsel to repay Petitioner's $5,000 "pretrial loan" to him created a financial motive for trial counsel to allow Petitioner to be convicted.

The actions / inactions of trial counsel which will be argued submittedly represent conduct beneath what would be expected from reasonably competent trial counsel, particularly trial counsel who had been so well paid.

Petitioner did not want his trial attorney to be financially conflicted. If Petitioner had known that his trial counsel would be financially conflicted, he would have Discharged Trial Counsel.

B.    **Subsequent to Trial**

After Petitioner had been convicted, trial counsel contacted Petitioner's family and solicited a payment of $10,000 to file a "501 K" Motion for Petitioner. Petitioner's family paid $5,000 of this money before it learned that only the Government could file a 501 K Motion to reduce Petitioner's sentence. When told of this fact, trial counsel paid back monies paid towards the $10,000 501 K fee.

The solicitation of extra monies, both before and after trial, above and beyond the initial handsome $100,000 fee, reveals a monetary conflict between Petitioner and counsel.

In the case of <u>*United States v. Rodriguez Rodriguez*</u>, 929 F.2d 747 (1st Cir. 1991), the Court considered the question of attorney conflict and found:

> *We have held that a Defendant must prove two  elements to establish an actual conflict of interest having an adverse effect on representation. "First, he must demonstrate  that some plausible alternative defense strategy or tactic might have been pursued.  He need not show that the defense would necessarily been successful if it had been used,  but that it possessed sufficient substance to be a viable alternative. Second, he must establish that, the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."*

(p.751).

In the case of <u>*Briuglio v. U.S.,*</u> 675 F.2d 816 (3rd Cir. 1981), the Court held that the fact that the same United States Attorney's Office that was prosecuting *Briuglio* was, at the same time, investigating his attorney, required an evidentiary hearing.

Here, trial counsel solicited $5,000 to avoid being "locked up".  If the threat of being "locked up" came from any part of the United States Government, Petitioner was entitled to immediately be informed of that fact.  He was not.

Trial counsel's monetary demands  present another concern.  Counsel did not present a plea offer to Petitioner.  If counsel had done so, Petitioner may have requested the return of part of the $100,000 fee, as he would have accepted a plea.

The solicitation of $10,000 post trial for a "501 K" Motion that counsel <u>could</u> <u>not</u> initiate presents another question.  Was the submittedly ineffective trial performance of counsel to "set-up" the "501 K" fee solicitation?

Only an Evidentiary Hearing can answer these questions as to why additional monies were solicited.  Those answers should provide information as to how counsel's performance was affected.

6

## **TRANSCRIPTS**

As the instant Record is reviewed, it is evident:

On p. 332, a tape was played but not transcribed. It was argued that this tape was inaudible "It's essentially in Ebonics, whoever G & L used to transcribe it did an inaccurate job" (T.328).

A tape was played on T.449, 450, 451 and 452 but not transcribed. Impeaching questions were directed towards Sean Harris with regards to this untranscribed tape.

On T. 778, the video deposition testimony of Tommie Thompson was played but not transcribed.

During the Government's closing argument, the Government played a tape which was not transcribed (T. 1307).

In its Jury Instructions, the trial court refers to a transcript of a tape which was not transcribed in open court (T.1314).

As can be readily seen from the Record on appeal, there were certain portions of the trial which were not transcribed.

Not only was the "video depo" not transcribed (T.778), Mr. Smith was not present when it was made (T.776) nor did he waive a right to be present.

Tapes were played to the Jury (T.332, 333, 449, 450, 451, 452, 1307) which were not transcribed.

In its Jury Instructions (T.1314), the trial court referred to a tape, even though the contents of that tape were not transcribed.

7

In *U.S. v. Taverna*, 348 F.3d 873 (10th Cir. 2003), the Court held that the Court

Reporter's Act requires all criminal proceedings held in open court be recorded verbatim.

The Court held:

> *Furthermore, court reporters "are afforded no discretion in the carrying out of this duty; they are to record, as accurately as possible, what transpires in court.*

> (p.880).

and,

> *In a criminal case, the plain language of § 753 (b) is violated if the court reporter fails to transcribe videotaped evidence played in open court. See, 28 U.S.C. § 573 (b). We agree with the Eleventh Circuit that § 573 (b) of the Court Reporter's Act requires a verbatim transcription of all videotaped evidence presented in open court in a criminal case; or absent comprehensive recordation, the court reporter should provide some notation in the record that clearly identifies the specific portion of the videotape that is being played for the court or jury.*

> (p.880).

and,

> *Rather, and in accordance with the purpose of the Act, reversible error occurs when the unavailability of a transcript makes it impossible for the appellate court to determine whether or not prejudicial error was committed with regard to a challenged action.*

> (p.880).

In *United States v. Margetis*, 975 F.2d 1175 (5th Cir. 1992), the Court stated:

> *A complete and accurate record of trial proceedings is*
> *essential to the appellate process.  When a Defendant*
> *is represented by an appellate lawyer different    from*
> *the trial lawyer, a complete and accurate transcript is*
> *an imperative.  In such a situation a criminal Defendant*
> *typically need not show specific prejudice in order to*
> *obtain relief.  In <u>United States v. Selva</u>, we so held.  In*
> *<u>Selva</u> the        court reporter      became ill and failed to*
> *transcribe the closing argument of the prosecutor.*
> *The trial court declined to grant a new trial.  We held*
> *that a showing of prejudice was not necessary because*
> *Selva was represented on appeal by new counsel.*

                    (p.1176).

In this case, the Petitioner was represented on appeal by a different attorney than represented him at trial.

Appellate counsel does not refer to any tapes in the Statement of Facts (p.7-8 of initial brief).

It is questionable that appellate counsel did / had the opportunity to take these transcripts into account as is stated in the initial brief.

> *Counsel has not been provided with a docket sheet*
> *with the clerk's volume number for the record  on*
> *appeal.*

                    (p. 2 of initial brief).

It is submitted that Petitioner was Denied Due Process of Law by not having his entire trial transcribed as required by the Court Reporter's Act.

It is submitted that Petitioner was Denied the Effective Assistance of trial counsel because trial counsel failed to object to the non-recordation of these portions of his trial.

9

It is submitted that Petitioner was Denied the Effective Assistance of Appellate Counsel as his appeal was prepared and argued without these missing portions of his trial, without any reference to these missing portions and without any attempt to reconstruct these missing portions.

It cannot be forgotten that the evidence against Petitioner was basically the self serving testimony of other convicted individuals.

As the Government observed in its brief:

> *Thompson's testimony was a large part of the Government's case on the two alien smuggling counts of conviction.*

(p.29, govt. brief).

The videotape of Thompson's testimony <u>was</u> <u>not</u> <u>transcribed.</u>

It is submitted that pursuant to the above facts and arguments, Petitioner has been Denied both Due Process of Law and the Ineffective Assistance of Counsel due to the non-transcription of essential portions of his trial.


## PLEA


After Mr. Smith was convicted, trial counsel told Mr. Smith that the Government had offered Petitioner a plea of 18 months before trial.

Petitioner was never informed, before trial, that the Government had extended a plea offer of 18 months to him.

If Petitioner has been told that the Government had extended an 18 month plea to him he would have accepted that plea offer.

In the case of _Griffin v. United States_, 330 F.3d 733 (6th Cir. 2003), the Court

considered the issue of a trial counsel's failure to convey a plea offer and stated:

> _A defense attorney's   failure to notify his client of_
> _a prosecutor's     plea offer constitutes ineffective_
> _assistance of counsel under the Sixth Amendment_
> _and satisfied the first element of the     Strickland_
> _test._

(p. 737).

and,

> _Nevertheless,  it has been held, as the    district court_
> _recognized,  that a    substantial disparity  between_
> _the penalty       offered by the prosecution and    the_
> _punishment  called  for by the indictment is sufficient_
> _to establish   a reasonable probability that a properly_
> _informed and advised Defendant would have accepted_
> _the prosecution's offer._

(p.737).

and,

> _There is sufficient objective evidence in the record to_
> _warrant an evidentiary hearing to determine whether_
> _there is a "reasonable probability" that Griffin would_
> _have accepted the plea offer if he knew about it. The_
> _gap between his potential sentence if convicted   and_
> _the plea offer is     sufficient to merit an   evidentiary_
> _hearing._

(p.739).

Trial counsel failed to notify Mr. Smith of an 18 month plea offer.

If Mr. Smith had known of the 18 month offer, he would have accepted the offer.

The disparity between the 18 months offered and the 262 month sentence Petitioner received is enormous.

Petitioner was Denied the Effective Assistance of Counsel. See, also _U.S. v. Blaylock_, 20 F. 3d 1458 (9th Cir. 1994).

Courts have also held that a Defendant has been Denied the Effective Assistance of Counsel if the trial attorney fails to give a competent professional opinion that it would be "almost impossible" for the Defendant to win his case and the Defendant would have accepted a plea offer. See, _Griffin_ at p. 703; _U.S. Osorio_, 929 F.2d 753 (1st Cir. 1991) at p. 753; _U.S. v. Chacon-Palomares_, 208 F, 3d 1157 (9th Cir. 2000).

A defense attorney in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable. See, _Cullen v. U.S._, 194 F. 3d 401 (2d Cir. 1999).

In this case, not only did defense counsel not tell Petitioner of the Government's plea offer, counsel told Petitioner "not to worry" about the case, indicating that it could easily be won. Counsel failed to competently give his professional advice as to Mr. Smith's chances of prevailing at trial.

This advice was Ineffective and now Petitioner is serving 262 months incarceration when, if he had been realistically advised as to his case (which the Government characterizes in its Brief as "overwhelming") Petitioner would have accepted a plea and avoided the lengthy incarceration he now serves.

Petitioner was Denied the Effective Assistance Of Counsel.

Failure to accurately inform a Defendant of the maximum punishment he could

face after trial and conviction can also result in the Ineffective Assistance of Counsel.

See, _Griffin_, supra; _Osorio_, supra; _Teague v. Scott_, 66 F.3d 1167 (5th Cir. 1995); _Cullen v._

_U.S._, 194 F.3d 401 (2d Cir. 1999); _Paters v. U.S._, 159 F. 3d 1043 (7th Cir. 1998); _U.S. v._

_Baylocks_, supra; _U.S. v. Chacon-Palomares_, 208 F. 3d 1157 (9th Cir. 2000).

In _U.S. v. Day_, 969 F. 2d 39 (3d Cir. 1992), the Court discussed the importance of

accurate sentencing exposure information:

> _Although in this case Day concedes     that he was notified_
> _of the terms of the plea bargain,     he alleges     that     the_
> _advice that he received was so incorrect and so insufficient_
> _that it undermined his ability to make an intelligent decision_
> _about whether to accept the offer.  That, we hold, also states_
> _a Sixth Amendment claim._

(p.43).

and,

> _Because the Sentencing Guidelines have become a critical,_
> _and in many cases, dominant   facet of federal   criminal_
> _proceedings, we can say, however, that familiarity with the_
> _structure and basic content of the Guidelines (including the_
> _definition and implications of career offender status) has_
> _become a necessity for counsel who seek to give effective_
> _representation._

(p.43).

and,

> _Therefore, we conclude that if Day is correct that he was_
> _seriously misled about his sentence exposure when the_
> _likelihood of his conviction   was overwhelming,   he_
> _received ineffective assistance of counsel._

(p.44).

In *Smith v. United States*, 348 F.3d 545 (6th Cir. 2003), the Court recently

considered this question and stated:

> *Other panels in this and other circuits have pointed to the*
> *disparity between the plea offer and the potential sentence*
> *exposure as strong evidence of a reasonable probability that*
> *a properly advised defendant would have accepted a guilty*
> *plea offer, despite earlier protestations of innocence. See,*
> *Managa v. Hofbauer, 263 F.3d 542, 552-53 (6th Cir. 2001)*
> *(finding the difference between a ten-and twenty-year sentence*
> *significant); United States v. Day, 969 F.2d 39 (3d Cir. 1992)*
> *(finding ineffective assistance of counsel when trial counsel*
> *mistakenly described the penalties of trial as ten years rather*
> *than the twenty-two years the defendant received at sentencing,*
> *and where a plea offer of five years had been made); United*
> *States v. Gordon, 156 F.3d 376, 377-81 (2d Cir. 1998)*
> *(holding that the wide disparity between the ten-year*
> *sentence recommended by the plea agreement and the seventeen-and-*
> *a-half years the defendant did receive was objective evidence*
> *that a plea would have been accepted.*

(p.552).

and,

> *On the other hand, the attorney has a clear obligation to fully*
> *inform her client of the available options. We have held that*
> *the failure to convey a plea offer constitutes ineffective*
> *assistance, see Griffin, 330 F.3d at 734, but in the context of*
> *the modern criminal justice system, which is driven largely*
> *by the Sentencing Guidelines, more is required. A criminal*
> *Defendant has the right to expect at least that his attorney*
> *will review the charges with him by explaining*
> *the elements necessary for the government to secure a*
> *conviction, discuss the evidence as it bears on those elements,*
> *and explain the sentencing exposure the defendant will face*
> *as a consequence of exercising each of the options available.*
> *In a system dominated by sentencing guidelines, we do not*
> *see how sentence exposure can be fully explained without*
> *completely exploring the ranges of penalties exploring the*
> *likely guideline scoring scenarios, given the information*
> *available to the defendant and his lawyer at the time. See,*
> *United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) (observing*

14

*that "the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal proceedings" such that "familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation."). The criminal defendant has a right to this information, just as he is entitled to the benefit of his attorney's superior experience and training in the criminal law.*

*The record in this case leaves us in considerable doubt over the nature and quality of the advice Smith received before he made his final decision to reject the government's proposed bargain. Attorney Stephens' affidavit states that Smith was aware of a plea offer, and that Smith was predisposed against a plea to save face in front of his wife, but it does not state that Stephens actually discussed the terms of the agreement with Smith. More importantly, the affidavit does not state that Stephens informed Smith of the dramatically higher sentence potential (over ten times as much incarceration) to which Smith was exposed if he were convicted of even one of many charges. The affidavit does not claim that Stephens at any time expressed to Smith how unlikely he was to prevail at trial.*

(p.552-553).

Not only was Mr. Smith never informed of the Government's 18 month plea, he was never informed as to his maximum sentencing exposure.

Had Mr. Smith been accurately informed that he could receive a sentence of 262 months, he would have "jumped on" the Governments plea offer of 18 months.

Had Mr. Smith been accurately informed that he could receive a sentence of 262 months, he would have insisted that his attorney seek a plea offer from the Government.

In this case, Mr. Smith was Denied his Right to the Effective Assistance of Counsel as to the Plea Offer Not Conveyed, the Professional Assessments of his Case Not Made, and the Maximum Sentencing Exposure Not Revealed.

## **ATTORNEY INVESTIGATION**

A.    **DCC**

As the evidence against Mr. Smith was the testimony of convicted

persons, Mr. Smith hired private investigators to aid his attorney in locating witnesses on

behalf of his defense.

For its case, the government argued:

> *But you have evidence that there is lots of unexplained*
> *wealth.*

(p.1297).

and,

The numbers I just gave you, without paying taxes, without paying a mortgage,

without buying one bag of Groceries, the Defendant is spending $1,600 a month, for a

warehouse with all that stuff in it, for a boat that had the pot on it, and for the berth at the

marina to keep it in.

For anyone who has ever balanced a checkbook, who has had to go to a job and

make a living, does that make sense? I submit not.

Any other unexplained wealth? Yes. Remember Don Ulmer? I'll come back

with what defendant says about him in a minute. Mr. Ulmer, $9,500 in cash right out of

the defendant, for a boat that gets put in the marina; a few months later, it gets sent to the

Bahamas. The next time we see it, it is in an inlet full of aliens, gets seized on the spot,

and it is gone forever. Never even registered in his name. $10,000 walked away.

How about the Luhrs? The same records I just talked about. $11,000 down

payment. In the books, you will see a record of cash transaction. The Luhrs people have

16

to fill it out. He paid $11,000 dollars in cash. According to his own records, that's about a little less than a third of what he says is his yearly income.

Does this make sense? In this a man who's – and Counsel says, it's just hard working for a living. There is money someplace, folks.

We didn't find it, that is true. He didn't keep it, but it is there someplace. I don't know where else he kept it, but it is there someplace.

By the way, the Luhrs, the boat is forfeited, gone, another $11,000 – down the drain.

(T. 1298-9).

Well, what I said to you a little while ago – a few minutes ago about all this unexplained money the defendant has. Compare that to Sean Harris, who when he gets thrown out of his house after a fight with his wife has to go sleep in a warehouse.

Does that sound like a big drug trafficker? Does that sound like Mr. Big? Did he own the boats? Did he pay for the boats, the warehouse where it was all found? No, he did not.

(T.1303).

The Record is clear that a good part of the Government's case focused on Mr. Smith's "unexplained wealth."

Trial counsel failed to present evidence that Mr. Smith owned DCC Building Management, a company in existence since 1996. DCC renovated apartments. Trial counsel's presentation of evidence as to DCC would have explained a legitimate alternative source of income that Mr. Smith had.

17

The failure of trial counsel to present evidence as to the existence of DCC and it is legitimate business operations and income Denied Mr. Smith the Effective Assistance of Counsel and allowed the government to argue insinuations which not only were not true but resulted in Mr. Smith's convictions.

In *Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003), the Court stated:

> *The pre-trial period constitutes a "critical period" because it encompasses counsel's constitutionally imposed duty to investigate the case. In* Strickland, *the Supreme Court explicitly found that trial counsel has a "duty to investigate" and that to discharge that duty, "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."* Strickland, *446 U.S. at 691, 104 S.Ct.2052. The Supreme Court also recognized that without pre-trial consultation with the Defendant, trial counsel cannot fulfill his duty to investigate.*

(p.743).

In *Freedman v. United States*, 588 F. 2d 1010 (5th Cir. 1979), the Court stated:

> *Where, however, the petitioner supports his claims of inadequate preparation, attorney indifference, failure to call witnesses, etc., with plausible factual allegations and evidence sufficient to raise a substantial doubt that his attorney's court performance was not effective as it might seem to third-party observers, the court is obligated to delve behind the scenes and ascertain whether the attorney, either by inaction or through ill-taken action, failed to meet the standards of a reasonably competent and devoted advocate, to the ultimate prejudice of the petitioner.*

(p.1016).

By failing to call witnesses to testify as to DCC and money flowing from it to Mr. Smith, defense counsel Denied Mr. Smith the Effective Assistance of Counsel by

allowing the prosecution to argue insinuations that ultimately resulted in Mr. Smith's convictions.

B.    **ALIBI**

Mr. Smith submits that if defense counsel investigated and called to testify the alibi witnesses whose names he provided to defense counsel, he would not have been convicted.

It has been found that trial counsel renders Ineffective Assistance when he fails to call Alibi witnesses who could have exonerated a Defendant.  See, *U.S. ex. Rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003); *Panel v. Hollins*, 261 F.3d 210 (2d Cir. 2001); *Bruce v. U.S.*, 256 F3d 592 (7th Cir. 2001); *Washington v. Smith*, 219 F.3d 620 (7th Cir. 2001); *Code v. Montgomery*, 799 F.2d 1481 (11th Cir. 1986).

By not both investigating and calling to testify alibi witnesses whose names and testimony were provided to him by Mr. Smith, Trial Counsel did not render Mr. Smith the Effective Assistance of Counsel.

C.    **PHOTOS OF PORT**

Mr. Smith had hired investigators to assist trial counsel.  These investigators had taken photos of the Port and Cargo Area where the Cargo Container incidents of January, 1998 and October, 1999 allegedly occurred.

These defense photos would have conclusively shown that the alleged

incidents could not have taken place as testified to by Sean Harris.

Not only would these photos have resulted in Acquittals as to the Cargo

Container incidents, they would have so severely undermined the testimony of Sean

Harris that Mr. Smith would have been Acquitted on all Counts.

Failure to present and argue these Exculpatory Photographs Denied Mr.

Smith his Right to the Effective Assistance of Counsel.

Concerning defense counsel's investigation or, rather, lack thereof, the

Record reflects that, as to the defense case, defense counsel stated:

> *For the record, I haven't interviewed these people. And*
> *these are witnesses that were provided to me. It is  my*
> *practice, for the record - - I just - - I don't vouch say the*
> *testimony. If it comes out, it comes out. But I'm not*
> *going to be asking for any blatant hearsay, your Honor.*

(T. 1150).

In view of the foregoing facts, arguments, and authorities, Mr. Smith was Denied

the Effective Assistance of Counsel in the Investigation and Presentation of the Defense

case.

## OPINION TESTIMONY

Mr. Smith wished his trial counsel, pursuant to Rule 701 F.R., to call witnesses

who would testify that they knew Sean Harris, that they had known him for some time

and that their perception of him was that Sean Harris was a liar.

20

Sean Harris was the linchpin of the prosecution's case. If his credibility were impeached, the Government case evaporated.

The failure of trial counsel to call witnesses to give their opinion, pursuant to Rule 701, or to preserve this issue for appeal, if these witnesses were excluded, Denied Mr. Smith the Effective Assistance of Counsel.


## RULE 29 MOTION


At the end of the State's case, the defense argued a Rule 29 Motion as to Counts I and II with reference to cocaine, that there was no evidence of the cocaine charged in the indictment (T. 1133).

The Court stated:

> *On Count 1 and 2, I'm going to reserve and may have further argument on the deficiency of the evidence to go to the jury on the cocaine substance.*

(T. 1139).

On June 7, 2001, Petitioner filed a Motion for Judgment of Acquittal.

It is submitted that that Motion for Judgment of Acquittal was never heard.

The failure of trial counsel to ensure that a Motion his client wishes is ruled upon can constitute the Ineffective Assistance of Counsel. See, *U.S. v. Johnson*, 995 F. Supp. 1259 (F. Kan 1998).

The failure of trial counsel to ensure that this Motion was heard and Mr. Smith's conviction for cocaine set aside Denied him the Effective Assistance of Counsel.

## APPRENDI

None of the Jury Verdicts specify the amount of alleges narcotics involved in that Count.

Without such a Jury Finding as to amount, the Verdicts conflict with the requirements of *Apprendi v. New Jersey*. 120 S.Ct. 2362 (2000) and *Ring v. Arizona*, 122 S.Ct.2428 (2002).

The failure of trial counsel to secure Jury Verdict forms as to substance amounts Denied Mr. Smith his Right to the Effective Assistance of Counsel.

The failure of appellate counsel to argue this Point on Appeal Denied Mr. Smith his Right to the Effective Assistance of Counsel.

Pursuant to *Apprendi* and *Ring*, Mr. Smith must be Resentenced in this Cause.

## DEFENSE ATTORNEY OPENING THE DOOR

### I LA question

During the government questioning of Mr. Mussoline as to cargo pilferages, he stated:

> *There was one instance where three crew members were involved in pilferage from a container, and they were subsequently caught and arrested. 99 times out of 100, it is ILA involvement.*

(T.678).

Mr. Smith is an ILA member.

The trial court agreed that the comment was prejudicial (T.693).

The trial court commented that it was defense counsel's cross-examination that "opened the door" to Mussoline's comment (T.695).

Mussoline's comment was important and prejudicial as only Sean Harris's testimony linked Mr. Smith to that cargo incident. Without Mussoline's comment, the Jury could have easily acquitted Mr. Smith on that Count.

By asking questions which would allow that irreversibly prejudicial comment from Mussoline, trial counsel Denied Mr. Smith the Effective Assistance of Counsel.

## PROSECUTION MISCONDUCT

During its argument to the Jury, the prosecution commented:

> *In one case, the phone registered in the name of the Defendant at his home address.     You have got another phone taken physically from Sean Harris at the time of his arrest, which he (Defendant) owns up to having purchased or leased.*

(T.1268).

and,

> *Let me stand on Rosado for one minute. Everyone in this courtroom, ladies    and gentlemen, should know something and this is it:  Mr. Rosado knows more than he is telling.  How do you know that?*

*Here is how. On the 26th,    the    Coast*
*Guard stopped that boat.*

(T. 1300).

and,

*Rosado saw it going on.  He won't admit to*
*it here.  But that's the call that went in.*
*That's the call that was made.*

(T.1301).

and,

If he was so desperate to help himself, ladies and gentlemen, the guy he got the

bale from could have been set up, if he was to go through something so incredibly

ridiculous.

But that's the story, that's the fantasy the Defendant wants you to believe that he

was a dupe, a babe in the woods, a mere country bumpkin –

| | |
|---|---|
| Mr. Gilson: | Reserve a Motion, Your Honor. |
| Mr. Ryan: | - - who was at the mercy of the evil - - |
| The Court: | Motion reserved. |
| Mr. Ryan: | Sean Harris. |

(T.1305).

24

Mr. Smith did not testify at trial. The first government comment was a comment upon his failure to testify and there should have been an immediate objection.

In *Govt. of Virgin Island v. Nicholas*, 759 F.2d 1073, 1081 (1985), the Court held that trial counsel's failure to object to testimony concerning incriminating statements presumed to have been made by the Defendant in a taped conversation with a government informant was a basis for postconviction argument as to Ineffective Assistance of Counsel.

A prosecutor is prohibited from commenting on an accused's postconviction arrest silence. See, *Freeman v. Class*, 95 F.3d 639 (8th Cir. 1996). See, also, *Peterkin v. Horn*, 176 F. Supp. 2d 342 (E.D. Pa. 2001).

Trial counsel's failure to object to that comment which inferred / referred to Mr. Smith's failure to testify Denied Mr. Smith the Effective Assistance of Counsel.

Comments 2 and 3 refer to evidence that was not presented as to what Rosado knew, but did not testify to.

In *Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000), the Court considered comments as to facts not in evidence and stated:

> *Misrepresenting facts in evidence can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." See, Donnelly v. De Cristoforo, 416 U.S. 637, 646, 94 S.Ct. 1868, 40 L. Ed. 2d 431 (1974). For similar reasons, asserting facts that were never admitted into evidence may mislead a jury in a prejudicial way. See, Berger v. United States, 295 U.S. 78, 84, 55 S.Ct. 629, 79 L. Ed. 1314 (1935). This is particularly true when a prosecutor misrepresents evidence because a jury generally has confidence that a prosecuting*

> *attorney is faithfully observing his obligation as a*
> *representative of a sovereignty. See, id.at 88, 55 S.Ct.629.*

(p. 700).

and,

> *Not only did the prosecutor improperly refer to statements*
> *not in evidence, but is clear that the prosecutor's purpose*
> *was to enhance Tamara's credibility in the eyes of the jury.*
> *See, eg. J.A. at 255 ("You think that a ten year old child is*
> *going to go through all of that, fool everybody, talking*
> *about two instances.") Such bolstering is also improper.*
> *Cf. <u>United States v. Francis</u>, 130 F.3d 546, 551, (6th Cir.*
> *1999) (stating that improper "bolstering occur when the*
> *prosecutor implies that the witness's testimony is*
> *corroborated by evidence known to the government but*
> *not known to the jury"). <u>United States v. Duval</u>, No. 89-*
> *1891, 1990 WL 52371, at 2 (6th Cir. April 26, 1990)*
> *(unpublished decision) (stating that improper witness*
> *vouching occurs when a prosecutor alludes to evidence*
> *outside the record as supporting the witness's testimony.*

(p.701).

The government's comments that "Rosado knew more than he was telling" and

that "Rosado saw it going on but <u>wouldn't admit to it here,</u>" implied that the government

had evidence from Rosado that was <u>not presented</u> to the Jury.

The government's comment "Rosado saw it going on. He won't admit to it here"

obviously refers to conjecture which was <u>not based on the facts of Rosado's testimony.</u>

These comments were improper and should have compelled defense counsel to

catapult from his chair and both object and move for a mistrial. He did neither. Mr.

Smith was Denied the Effective Assistance of Counsel.

A prosecutor should not demean a Defendant, defense counsel or the defense

theory in order to obtain a conviction.

It is the prosecution's obligation to present facts, sufficient beyond a reasonable

doubt, to prove guilt. When a prosecutor abandons that role and resorts to the bombast of

a sideshow barker by referring to a defense as "fantasy" and "incredibly ridiculous", he

demeans his office, the court and himself by such improper comments.

When these irreversibly prejudicial comments fouled the court air, defense

counsel should have immediately objected and moved for a mistrial. He did not do so.

Mr. Smith was Denied the Effective Assistance of Counsel.


The mere fact that the prosecution had to resort to such comments to obtain

convictions shows that the government's case was not overwhelming.

Without the implication of "extra Rosado evidence" one or more counts resting on

his testimony would have resulted in acquittal (s).

Without these improper comments, the presentation's case, resting on the bought

testimony of Ellis and Harris would have not been as convincing and there is a

reasonability probability that one or more of the verdicts would have been different.


## ATTORNEY DEMEANOR AND CONDUCT


In the case of *Tejeda v. Dubois*, 142 F. 3d 18 (1st Cir. 1998), the Court found that

an attorney's conflict with the trial judge can result in a Denial of the Effective

Assistance of Counsel for his client.

In the instant case, the Record reflects that:

The court grew exasperated with counsel:

THE COURT:        Let me make an observation here.  When I have made a ruling on that, generally, my ruling is a final order or final ruling.

If the question has been asked once, I overrule the objection.  Asked a second time, I overrule it.  A third time is another objection which interrupts the question.  I don't know what kind of message that sends to the jury, the one that I think it sends is that I don't know that I'm doing until I'm annoyed.

And so that invited that kind of outburst from this Court which unusual.  But when I make a ruling, you don't like the ruling, may you may ask to take it up at side bar to have it reviewed.

You may live with it and take it to the Court of Appeals, but don't persist in objecting two times, three times after I have made a ruling.

(T.689-90).


and,


THE COURT:        Let me cover another point here now.  And as this case gets closer to the end, I can anticipate that the adrenaline is going to be flowing even more.

We ended this proceeding yesterday with the Government asking to take the recess and come back today to conclude the examination of a witness.

You stood up, Mr. Gibson, to make the statement that was highly inappropriate, that I had - - that you have heard nothing riveting from this witness on the witness stand,

and that you wanted to proceed with your cross-examination, even though the Government has not yet tendered the witness.

This was in the presence of the jury.

That was highly inappropriate. You have no right to voice an opinion as to the strength of the Government's case in the presence of this jury. They are going to decide whether the Government has got enough proof to convict this defendant. And that wasn't the first time; that was the second time that happened.

I don't have to tell you what the consequences will be. It's not fair. I understand that you have a job to do. You're representing your client as best that you can, but there is a point at which - - you crossed the line. And don't cross the line again.

MR. GIBSON:        May I be heard on that issue?

THE COURT:        No, you may not. I have made my point, and let's proceed.

(T.899-900).

The Records also reflects that:

Trial counsel began trial without the charging indictment (T.15-16, 19).

The government made plea offers (not conveyed to Petitioner) (T.19).

Defense counsel tried part of the case without his glasses (T. 295).

No pretrial objection was raised as to a tape defense counsel argued was inaccurately transcribed (T.328).

Trial counsel had a "nervous twinge" before closing argument (T.251).

Trial counsel informed the Jury that he did "not recall the cross-examination of Special Agent De Angelus" (a crucial prosecution witness). (T. 1271-2).

29

There Record Assertions of trial counsel's conduct and demeanor indicate that he alienated the trial court and was unprepared to defend Petitioner for which he had been handsomely paid.

Under these circumstances, on these facts, Petitioner submits that he was Denied his Right to the Effective Assistance of Counsel.

## CUMULATIVE ERRORS

Mr. Smith specifically asserts that his Claim of Ineffective Assistance of Counsel is not based on any one particular error, but on the Cumulative Errors that were visited upon him.

It is proper to conduct a Cumulative Error Analysis when reviewing a Petition for Postconviction Relief. See, *Cargle v. Mullin*, 317 F.3d 1196 (10th Cir. 2003); *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001).

In this case, a review of the collective Cumulative Errors argued herein demonstrate the Denial of the Effective Assistance of Counsel.

These collective errors, if erased, would, to a reasonable probability, resulted in different verdicts.

## CONCLUSION

In view of the foregoing facts, arguments and authorities, the Petitioner , Darryl Smith prays this Honorable court to Vacate his Convictions and Sentences in this Cause.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is furnished to the U.S. Attorney Assistant United States Attorney, 500 East Broward Boulevard, 7th Floor, Fort Lauderdale, Florida 33394 on this **11** day of March, 2004.

Respectfully submitted,

THE LAW OFFICE OF:
J.H. LIPINSKI, Esquire
20835 N.W. 2nd Avenue
Miami, Florida 33169

John H. Lipinski, Esquire
Florida Bar No. 181805

## VERIFICATION

STATE OF FLORIDA)

COUNTY OF DADE)

    **I, DARRYL SMITH** do swear that I am the defendant in the above – styled

cause, that I have read the foregoing motion for Rule 3.850 post conviction relief and

have personal knowledge of the facts and matters therein set forth and alleged; and that

each and all of these facts are true and correct.

                               DARRYL SMITH

## FOR AN ACKNOWLEDGEMENT IN AN INDIVIDUAL CAPACITY:

STATE OF FLORIDA

COUNTY OF _____

The foregoing instrument was acknowledged before me this ____ day of _____,
2004, by **DARRYL SMITH.**

                        _____
                        **NOTARY PUBLIC-STATE OF FLORIDA**

Personally Known _____ OR Produced Identification _____.